STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2021 CA 0165

SUCCESSION OF MARLENE W. FRAZIER

**Judgment Rendered:** OCT 2 1 2021

\* \* \* \* \* \*

On appeal from the
Twenty-First Judicial District Court
In and for the Parish of Livingston
State of Louisiana
Docket Number 17580

Honorable Charlotte H. Foster, Judge Presiding

\* \* \* \* \* \*

| | |
|---|---|
| Kim Segura Landry<br>Gonzales, LA | Counsel for Plaintiff/Appellant<br>Joseph Frazier, II |
| A. Bradley Berner<br>Hammond, LA | Counsel for Defendant/Appellee<br>Michelle Frazier Faust |

\* \* \* \* \* \*

BEFORE: GUIDRY, HOLDRIDGE, AND CHUTZ, JJ.

Holdridge J. dissents for reasons assigned.

**GUIDRY, J.**

This is an appeal from a judgment dismissing a petition to probate a testament and petition to annul a testament. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

Marlene Frazier died testate on February 15, 2020. Ms. Frazier was survived by two adult children, namely, Joseph Michael Frazier, II, and Michelle Frazier Faust. On March 17, 2020, Ms. Frazier's son, Mr. Frazier, filed a petition to probate the February 12, 2013 testament of his mother and confirm his appointment as executor of the estate. In his petition, Mr. Frazier prayed that the court "direct a search to be made for any other testaments."[1] The trial court signed an order on March 20, 2020, allowing the 2013 testament to be filed and naming Mr. Frazier as executor pursuant to that testament.

Thereafter, on April 29, 2020, Ms. Faust, the daughter of Ms. Frazier, filed a petition to probate the November 11, 2019 testament of her mother. On that same date, Ms. Faust filed an opposition to the probate of the February 2013 testament. Ms. Faust also requested a temporary restraining order to prohibit Mr. Frazier from taking any actions as the executor of the Ms. Frazier's estate. In response, Mr. Frazier filed "Motions to Strike Petition to Probate, For Termination of Independent Administration, Dissolution of Temporary Restraining Order, Damages for Wrongful Issuance, and to Disqualify Counsel, Exceptions and Opposition to the Petition to Probate Testament and/or Petition to Annul." Mr. Frazier, in seeking to annul the November 2019 testament, asserted that the testament was invalid under the provisions of La. C.C. art. 1479.[2]

---

[1] Mr. Frazier later filed a second petition to probate a testament of his mother dated October 19, 2015.

[2] Article 1479 is titled, "Nullity of donation procured through undue influence."

2

Following a hearing on July 24, 2020, the trial court denied and dismissed Mr. Frazier's petitions to probate the testaments dated February 2013 and October 2015, and denied Mr. Frazier's motions, exceptions, opposition and petition to annul the November 2019 testament.[3] The judgment was signed on October 13, 2020. Mr. Frazier now appeals, assigning the following as error:

> The trial court committed manifest error by finding from the evidence presented that the Last Will and Testament of Marlene W. Frazier date[d] November 11, 2019 was not a nullity under the provisions of La. C.C. art. 1479 as a result of the undue influence of Michelle and Errol Faust over Marlene Frazier, denying the Motions, Exceptions, Petition to Annul, and Petition to Probate the October 19, 2015 Last Will and Testament of Marlene W. Frazier filed by Jay Frazier and dismissing the Petition to Probate with prejudice.

## DISCUSSION

Pursuant to La. C.C. art. 1479, a donation *inter vivos* or mortis causa shall be declared null upon proof "that it is the product of influence by the donee or another person that so impaired the volition of the donor as to substitute the volition of the donee or other person for the volition of the donor." Concerning the type of influence that would result in the invalidity of a donation, Comment (b)[4] of Article 1479 provides, in pertinent part:

> [T]he objective aspects of undue influence are generally veiled in secrecy, and the proof of undue influence is either largely or entirely circumstantial. ... [E]veryone is more or less swayed by associations with other persons, so this Article attempts to describe the kind of influence that would cause the invalidity of a gift or disposition. Physical coercion and duress clearly fall within the proscription of the previous Article. The more subtle influences, such as creating resentment toward a natural object of a testator's bounty by false statements, may constitute the kind of influence that is reprobated by this Article, but will still call for evaluation by the trier of fact. Since the ways of influencing another person are infinite, the definition given in this Article is used in an attempt to place a limit on the kind of influence that is deemed offensive. Mere advice, or persuasion, or kindness and assistance, should not constitute influence that would

---

[3] The judgment was designated as a final judgment.

[4] This article presumes a donor has capacity. Obviously, if a donor lacks capacity, then the entire donation or will is invalid for that reason alone, and issues of fraud and undue influence are irrelevant. La. C.C. art. 1479, Comment (b).

destroy the free agency of a donor and substitute someone else's volition for his own.

The influence may be exerted by the donee himself or by a third person, even under circumstances where the donee takes no part in the activities and may be unaware of them, as long as some person exercises control over the donor, presumably one who is interested in the fortunes of the donee. See La. C.C. art. 1479, Comment (c); Succession of Himel v. Todd, 11-1638 (La. App. 1st Cir. 7/17/12), 2012WL2921495, *4, writ denied, 12-1878 (La. 11/9/12), 100 So. 3d 839.

A person who challenges a donation because of fraud, duress, or undue influence, must prove it by clear and convincing evidence.[5] La. C.C. art. 1483. However, if at the time the donation was made or the testament executed, a relationship of confidence existed between the donor and the alleged wrongdoer and the alleged wrongdoer was not then related to the donor by affinity, consanguinity or adoption, the person who challenges the donation need only prove the fraud, duress, or undue influence by a preponderance of the evidence. La. C.C. art. 1483.

A trial court's finding of undue influence is fact intensive and cannot be disturbed on appeal in the absence of manifest error. Allen v. Edmond, 18-1151, p. 4 (La. App. 1st Cir. 5/14/19), 277 So. 3d 359, 361. Under the manifest error standard of review, a reviewing court may not merely decide if it would have found the facts of the case differently. Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC, 14-2592, p. 8 (La. 12/8/15), 193 So. 3d 1110, 1115. Rather, to reverse a trial court's factual conclusion, the appellate court must find no reasonable factual basis for the trial

---

[5] To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. In re Succession of Crawford, 04-0977, p. 8 (La. App. 1st Cir. 9/23/05), 923 So. 2d 642, 647, writ denied, 05-2407 (La. 4/17/06), 926 So. 2d 511.

court's conclusion, and the finding must be clearly wrong. Hayes Fund, 14-2592 at p. 8, 193 So. 3d at 1115-1116.

In the matter herein, the trial court received testimony from a number of witnesses including Ms. Faust and her husband (the Fausts), and Mr. Frazier. What is clear from the testimonies of the Fausts and Mr. Frazier is that money was spent and transferred from the accounts of Ms. Frazier while Ms. Frazier was living with the Fausts. Mr. Frazier accused the Fausts of financial abuse on the part of Ms. Frazier and offered numerous spreadsheets and account information to show that large sums of money from Ms. Frazier's accounts were spent and/or transferred to the Fausts while Ms. Frazier was living with them.[6] Mr. Faust testified that Ms. Frazier would let her daughter, Ms. Faust, do "whatever she wanted to do." Ms. Faust testified generally that it was her mother's money, that she withdrew and transferred money with her mother's permission, and that her mother was devastated and embarrassed by Mr. Frazier's filing of the petition for interdiction.[7]

Additionally, William Pesnell, who drafted a July 2019 power of attorney for Ms. Frazier, testified that Ms. Frazier expressed that she was under duress from the Fausts.[8] Mr. Pesnell explained to the court: "That's one of the reason[s] we discussed doing a power of attorney that would solve both her problems. She wanted to keep her daughter happy and she wanted somebody to look over those financial records." When asked if Ms. Frazier understood what they were talking

---

[6] Mr. Frazier also testified that he, his mother, and others were concerned about the amount of spending from her accounts.

[7] On October 15, 2019, Mr. Frazier filed a petition for interdiction against his mother. Mr. Frazier petitioned that he be made the curator over Ms. Frazier's finances only, not over Ms. Frazier. Ms. Faust testified that Ms. Frazier understood the petition for interdiction to mean that Mr. Frazier thought she was "crazy."

[8] Mr. Frazier testified that he took his mother, Ms. Frazier, too see Mr. Pesnell because of her concerns about her finances. Subsequently, the power of attorney executed by Mr. Pesnell was set aside, and a new power of attorney was prepared by Ms. Bankston in August 2019.

about, Mr. Pesnell stated that he thought Ms. Frazier understood, commenting that she was "mentally in the moment and competent at the time." Similarly, Evelyn Pesnell, who was present on the day Ms. Frazier came in to sign the power of attorney, stated that Ms. Frazier was competent. Ms. Pesnell also stated that through her conversation with Ms. Frazier, she understood Ms. Frazier to be fearful of the Fausts.

Robbin Mulina and Clara Olinde, both cousins of Ms. Frazier, testified that following the death of her husband, Ms. Frazier tried to commit suicide and began drinking a lot. Ms. Olinde stated that Ms. Frazier "pretty much" told her that she had to rely on the Fausts "to do pretty much everything for her."

Rodney Erdey, who was appointed to represent Ms. Frazier in her interdiction proceeding, stated that Ms. Frazier was headstrong and not in need of interdiction. Mr. Erdey stated that Ms. Frazier was upset about the petition for interdiction filed by her son, Mr. Frazier. Mr. Erdey did not "see where [Ms. Frazier] was influenced in any manner as far as her spending money." It was clear to Mr. Erdey that Ms. Frazier "spent her money pretty loosely with whomever needed help, whoever she wanted to – to contribute to or whatever." Mr. Erdey testified that he had no concerns about Ms. Frazier being taken advantage of by the Fausts or anyone else.[9] Likewise, Leslie Bankston, a lawyer of Ms. Frazier,[10] testified that Ms. Frazier was upset and angry about the petition for interdiction. Ms. Bankston testified that she prepared wills at the request of Ms. Frazier in June, August, and November of 2019. According to Ms. Bankston, sometime after being served with the interdiction, Ms. Frazier both contacted and visited Ms. Bankston's office to again request that her will be changed. Ms. Bankston stated that she did

---

[9] Mr. Erdey also testified that Ms. Frazier expressed to him that some of her money was used to build living quarters for her behind the Fausts' home.

[10] Ms. Bankston and Ms. Frazier met at the church where Mr. Faust was the pastor.

not believe Ms. Frazier was acting under the volition of another in regard to changing her will.

Along with the testimony of the witnesses, Ms. Frazier's banking and financial information was introduced as evidence at the hearing. A cognitive evaluation produced for the interdiction proceeding, and a recording of the reading and signing of the November 2019 testament were also introduced. At the signing of the testament, when asked if she was being forced to make a new will, Ms. Frazier indicated that she was not being forced, then stated, "Well, actually my son is, by his actions." The cognitive evaluation of Ms. Frazier, performed one day after the November testament was signed, reads in part:

> Patient demonstrated impairment in short-term memory … but semantic memory preserved. Other areas of cognition including: language function, attention, basic intellect, visual-spatial skills are generally within normal limits. The cognitive profile would be suggestive of an early stage of dementia, likely vascular in nature due to risk factors.

> Based on review of collateral data from Dr. Calegan, the treating neurologist, patient has not had significant functional changes. … Typically, patients in this stage are still able to manage most of their activities of daily living, although they may need some degree of supervision and cueing. …

> In terms of decision-making with regard to finances, it is usually recommended that a patient at this stage of illness is provided supervision and assistance in management of finances. Patients at this stage are usually able to participate in decision-making but may not be capable of performing financial management consistently or in an entirely independent manner. … It would be anticipated in the next 1 to 2 years as dementia progresses that financial decision making will need to be fully transferred to power of attorney.

We have reviewed the record in this matter, and find no manifest error in the trial court's finding of fact. It is clear that Ms. Frazier relied on the Fausts after moving in with them; however, the evidence presented does not demonstrate that Ms. Frazier's "free agency was destroyed" or that either of the Fausts' "volition" was substituted for that of Ms. Frazier. Additionally, all of the witnesses generally indicated that Ms. Frazier was capable of understanding her actions. Even the

7

Pesnells, whose testimony was most favorable to Mr. Frazier, believed Ms. Frazier to be competent at the time. Moreover, there is no clear and convincing evidence before us that efforts were made by the Fausts to make Ms. Frazier change her last will and testament.[11]

To the contrary, the August 2019 will, which was prepared by Ms. Bankston and executed around the time the July 2019 power of attorney was set aside, did not include significant changes, but with the exception of gifts to Ms. Faust's children, essentially divided Ms. Frazier's assets equally between her children. It was not until after the petition for interdiction was filed that Ms. Frazier significantly changed her will.[12]

The fact that Ms. Frazier "allowed" her daughter and son-in-law to spend large sums of her money is not alone a significant indication of undue influence. And if Ms. Frazier was at times unaware of the financial actions and spending of the Fausts, as implied by some of the testimony of Mr. Faust, then the spending of those funds are of limited relevance on the ultimate issue of undue influence.

In determining that Ms. Frazier's last will and testament was not the product of undue influence, the trial court reasoned that Ms. Frazier's feelings towards her son, as a result of the petition for interdiction, caused her to change her will. We cannot say this conclusion was unreasonable or clearly wrong.

By Mr. Frazier's own admission, he had not spoken with his mother since the filing of the petition for interdiction. From our view, with the November 2019 testament being executed only weeks after the filing of the petition for interdiction, we find it reasonable to believe that Ms. Frazier, without any coercion or influence

---

[11] Ms. Frazier's bequest to her daughter, essentially disinheriting her son, is not invalid simply because Ms. Faust at some time may have made negative statements about Mr. Frazier. See La. C.C. art. 1479, Comment (b).

[12] When Ms. Frazier executed the November 2019 testament she appeared to be unaccompanied, alone with Attorney Bankston and two witnesses. Per the testament, Ms. Bankston was appointed to represent Ms. Faust as the executrix. Ms. Bankston testified that she "never represented Michelle Faust until we went to probate Ms. Marlene's last will and testament."

8

from the Fausts, could execute a will leaving all of her possessions to her daughter, with whom she lived, and disinherit her son,[13] especially if she was resentful about the interdiction proceeding or believed her son was trying to control her. Therefore, we find no merit in the assignment of error.

## CONCLUSION

For the above and foregoing reasons, we affirm the judgment of the trial court that denied and dismissed Joseph Frazier's petitions to probate the testaments dated February 2013 and October 2015, and denied Joseph Frazier's petition to annul the November 2019 testament. All costs of the appeal are assessed to the plaintiff/appellant, Joseph Frazier.

**AFFIRMED.**

---

[13] Ms. Frazier expressly left $100.00 to Mr. Frazier.

SUCCESSION OF
MARLENE W. FRAZIER

NO. 2021 CA 0165

COURT OF APPEAL

FIRST CIRCUIT

STATE OF LOUISIANA

**HOLDRIDGE, J., dissenting.**

I will respectfully dissent in this case. Mr. Frazier proved that $1.2 million was spend of his mother's funds and that his mother only benefitted directly from $200,000.00 of those funds. Thus, the remainder benefited Mrs. Faust and her family. The expenditure of one million dollars for the benefit of the Fausts without any justification demonstrates that they were unduly influencing Mrs. Frazier.